GORDON SILVER
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Proposed Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>WASHTRONICS OF AMERICA,<br><br>Debtor. | Case No: BK-S-11-24915-BAM<br>Chapter 11<br><br>Date: OST PENDING<br>Time: OST PENDING |

**DECLARATION OF RICHARD GUY GIRARDIN IN SUPPORT OF MOTION OF THE DEBTOR FOR ENTRY OF ORDERS (I) (A) ESTABLISHING AUCTION PROCEDURES RELATED TO THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (B) APPROVING CERTAIN STALKING HORSE BIDDER PROTECTIONS, AND (C) SCHEDULING A FINAL SALE HEARING; AND (II) AUTHORIZING THE SALE OF ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, RIGHTS OF SETOFF AND RECOUPMENT AND DEFENSES**

I, Richard Guy Girardin, hereby declare as follows:

1.  I am over the age of 18 and am mentally competent. I make this declaration in support of the Motion of the Debtor for Entry of Orders (I) (A) Establishing Auction Procedures Related to the Sale of Substantially All of its Assets, (B) Approving Certain Stalking Horse Bidder Protections, and (C) Scheduling a Final Sale Hearing; and (II) Authorizing the Sale of Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder Free and Clear of All Liens, Claims, Encumbrances, Rights of Setoff and Recoupment and Defenses (the "Motion") filed in the above-captioned bankruptcy case (the "Chapter 11 Case") of Washtronics of America, a Nevada corporation (the "Company" or "Debtor").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103145-002/1358023.doc

2. I am the President, sole officer and director, and designated responsible person [ECF No. 13] in the Debtor's Chapter 11 Case.[1] Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtor's management, employees, and the Debtor's various business and legal advisors. If called upon to testify as to the contents of this Declaration, I could and would do so.

3. Prior to the Petition Date, the Debtor had general discussions with various vendors and parties in interest about a potential acquisition of the Company. While those discussions progressed and resulted in some interest in a potential acquisition, the Company's highly leveraged capital structure and the uncertainty caused by certain disputes between the Debtor and its principal creditors hindered the Debtor's efforts to engage in a transaction.

4. Since the Petition Date the Debtor was forced to engage in some significant marketing efforts because of its severe liquidity crisis and its inability to obtain debtor-in-possession financing from any of its existing secured or allegedly secured lenders. During this process, the Debtor has approached or been contacted by at least five (5) parties either in the industry or in the business of liquidating equipment about a potential sale of its assets. The Debtor has endeavored to keep all interested parties advised on its status and continued such discussions with various parties in an attempt to generate the highest and best price for its assets.

5. Shortly after the Petition Date, the Debtor and the Stalking Horse Bidder entered into concerted negotiations regarding the DIP Financing and the sale of substantially all of the Debtor's assets, and the Stalking Horse Bidder undertook the significant due diligence necessary to complete those transactions. Prior to the filing of this Motion, the Debtor has also solicited the interest of at least five (5) other prospective buyers in the industry or who have contacted the Debtor expressing an interest in the Debtor's business or assets. In other words, the Debtor's marketing efforts for the proposed Sale commenced long prior to even the Motion was filed, and

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Motion.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103145-002/1358023.doc

2

will continue unabated until the time of the Bid Deadline.

6. The Debtor believes that the terms of the proposed Sale are fair and equitable and that the purchase price represents reasonably equivalent value for the Sale Assets. Furthermore, the Debtor intends to test the current offer through a thorough marketing process, including the Auction Procedures discussed herein, to ensure that the consideration received for the Sale Assets represents the best and highest value that can be achieved.

7. The Debtor believes that the proposed Auction Procedures carefully balance the Debtor's interests in (i) inducing the Stalking Horse Bidder to commit to consummate the Sale and (ii) preserving the opportunity to attract higher and better offers. Further, the Debtor submits that the proposed Auction Procedures are fair and reasonable under the circumstances of this case and are reasonably calculated to induce interested parties to submit competing offers for the Sale Assets, thereby ensuring that the maximum value is recovered for the Debtor's estate. Finally, the Debtor believes the Expense Reimbursement is fair and reasonable in amount and is reasonably related to the Stalking Horse Bidder's risk, effort and expenses associated with its proposed purchase of the Sale Assets.

8. The Debtor believes that the proposed sale to the Stalking Horse reflects the exercise of its sound business judgment and a proper exercise of its fiduciary duties. A sound business purpose exists for consummating the proposed Sale outside of a plan of reorganization; namely, that exigent circumstances require an immediate sale to preserve the value of the Debtor's business, and because the Debtor has only a limited amount of time prior the maturity date of its DIP Loan. The key terms of the Sale have been negotiated at arms' length and in good faith, resulting in a fair and reasonable purchase price for the Sale Assets. Further, the exposure of the Sale Assets to the market through the Auction Procedures ensures that the value received will represent the best and highest available under the dire circumstances facing the Debtor. The Debtor believes that approval of the relief requested in the Motion and the proposed Sale to the highest and best bidder is in the best interests of the Debtor's creditors, estate, and other parties in interest and should be approved.

9. The Debtor certifies that there has been no misconduct or collusion between the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103145-002/1358023.doc

3

1  Stalking Horse Bidder (or any other potential purchaser) and the Debtor, nor has there been any
2  attempt to take unfair advantage of other potential purchasers by the Debtor. The Debtor further
3  certifies that the Stalking Horse Purchase Agreement and the Auction Procedures are the product
4  of good faith, arm's length negotiations.

5    10.   Out an abundance of caution and in the interests of full disclosure, the Debtor
6  wishes to disclose that as part of the Stalking Horse Bidder's negotiations and due diligence
7  leading up to the Stalking Horse Purchase Agreement (and as previously referenced as a
8  condition to the DIP Loan), the Debtor consented to the Stalking Horse Bidder contacting Penske
9  (the Debtor's single largest customer) to discuss the Stalking Horse Bidder's potential purchase
10 of the Debtor's business, including the potential assumption and assignment of the Debtor's
11 Wash Services Agreements and a vehicle rental agreement with Penske, to insure that Penske
12 would be comfortable doing business with the Stalking Horse Bidder should it be the winning
13 bidder for the Debtor's assets. This contact with Penske was done with the Debtor's full consent
14 and supervision, and was requested principally because the Wash Services Agreements have
15 provisions allowing for their termination upon only thirty (30) days advanced notice. For the
16 avoidance of doubt, the Debtor does not believe that Penske's consent is legally required in order
17 for the Debtor to assume and assign any of its contracts with Penske, and indeed that the Debtor
18 may assume and assign any of its contracts Penske even over Penske's objection. However,
19 given the termination provisions contained in the Wash Services Agreements, the Stalking Horse
20 Bidder's request to seek Penske's conditional consent as part of its due diligence was reasonable
21 given the value of those agreements to the Debtor's business. The Debtor and/or its counsel will
22 make themselves available to other potential bidders to provide any necessary introductions and
23 negotiations similar to the foregoing.

24   11.   As part of these discussions with Penske, and as part of Penske's conditional
25 consent to the potential assumption and assignment of its agreements with the Debtor to a third
26 party, Penske also requested that all (not merely some) of its agreements with the Debtor be
27 assumed and assigned, as well as that the Debtor agree that Penske may exercise any valid offset
28 rights with respect to any post-petition sums due and owing under the Penske agreements. The

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103145-002/1358023.doc

4

Debtor agreed with Penske's requests, as it believes they are necessary, appropriate, reasonable and justified to maintain good customer relations with its largest customer, thereby maximizing the value of its assets, and also required pursuant Section 365 of the Bankruptcy Code, the law of setoff, and other applicable law in any event.

12. Penske, the Debtor and the Stalking Horse Bidder also negotiated for the acquisition by the Stalking Horse Bidder of any potential Chapter 5 causes of action against Penske as part of the Purchased Assets. The Stalking Horse Bidder was concerned that it would pay a significant purchase price to acquire the valuable Penske agreements only to have its new customer sued by the Debtor's bankruptcy estate, potentially disrupting the value of those agreements. During the ninety (90) days prior to the Petition Date, the Debtor paid Penske the total sum of $8,498.50. For the same reasons as previously stated, the Debtor believes that inclusion of a sale of these potential claims to the Stalking Horse Bidder is appropriate and indeed critical to maximizing the value of its assets in the Sale.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED: October 26, 2011.

_____
RICHARD GUY GIRARDIN

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103145-002/Girardin Declaration in Support of Sales Procedures

5